# STATE OF VERMONT

# ENVIRONMENTAL COURT


Appeal of Armitage, <u>et al</u>  }
                                 }
                                 } Docket No.  38-3-
                                 } 01Vtec
                                 }
                                 }

## <u>Decision and Order</u>

Margaret W. Armitage and 43 other property owners appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Pittsford, granting conditional use approval to Appellee-Applicants Eastern Development Corporation[1] and Joan S. Kelley for the construction of a building and associated parking lots and driveways to be used for a U.S. Post Office. Appellants are represented by Stephanie J. Kaplan, Esq. and Appellee-Applicants are represented by Vincent A. Paradis, Esq. The Town of Pittsford is represented by John A. Facey, III, but did not take an active role in this appeal.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellee-Applicant Eastern Development Corporation holds an option to purchase Lot 2 of a two-lot subdivision of a 2.69-acre parcel of land owned by Joan S. Kelley and located near the southeast corner of U.S. Route 7 and Plains Road in the > Village= zoning district of the Town of Pittsford. Approval of the subdivision and of the site plan is not at issue in the present appeal.

Two driveways served the combined property: one from Plains Road and one from Route 7. The Plains Road access is proposed to be improved as the sole access to both subdivided lots. The Route 7 access also serves the adjacent Rawlings property to the south. Although the combined property has access onto both Route 7 and onto Plains Road, the combined property does not extend to the actual

corner of Route 7 and Plains Road. Rather, the property= s westerly property line extends obliquely across the corner from the proposed Plains Road access driveway across the Route 7 access driveway, coming to a point on the Rawlings property. The present Route 7 access is proposed to be redesigned and screened so that it provides public access only to the Rawlings property.

Lot 1, to be retained by Ms. Kelley, contains an existing residence. Lot 2 is 1.5 acres in area and contains an existing barn structure used by the Kelley family in the past for retail sales. Lot 2 has been designed so that it has 100 feet of frontage along the Route 7 right-of-way, the minimum frontage required for a commercial use in the Village zoning district.

Lot 2 also contains a pond and shelter used in the past for the raising of ducks and geese. The excrement from the ducks and geese added organic pollutants to the pond, some of which were carried by the stream outlet from the pond into water flowing to the south and west. The pond is fed by two small streams, running in two swales, one extending from the northeast corner of the combined property and one from near the easterly corner of Lot 2. The source of the northeasterly stream may be traced to two springs that were in the nineteenth century used as a drinking water source, developed by the Pittsford Aqueduct Company. The pond was created by a small dam which controls the outlet at the southerly boundary of the property. The stream continues to the south across the adjacent lot and another lot, and through an 18" culvert under Route 7 at Depot Road. Its outlet on the westerly side of Route 7 is within a steep ravine, through which the water flows onto the property of Appellant Margaret Armitage. where it has in the past provided water for horses and other livestock on the Armitage property.

Appellee-Applicant proposes to demolish the existing barn structure and goose house on Lot 2 and to construct on the property a building and associated parking areas to be used for the U.S. Post Office to serve the Pittsford area. In connection with this project, Appellee-Applicant now also proposes to drain and eliminate the pond. A post office is a conditional use in the Village zoning district. The proposed hours for the post office are unknown, but are likely to be from 7 or 7:30 a.m. to 5 or 5:30 p.m. on weekdays and also for some period on Saturday mornings. No evidence was presented as to whether the lobby of the post office would be open extended hours beyond the hours of the counter service. From one to as many as eight employees will be employed at this post office, although approximately five of

those will be route carriers who do not spend most of their time at the post office itself. No evidence was presented with regard to the number of persons normally to be employed at the building at one time.

The proposed building is L-shaped, presenting the appearance of an essentially rectangular 75' x 42' building, with an extension on the southeasterly corner for the truck loading bay, and an extension on the westerly end for an entrance portico. It covers a total of 3,630 square feet in area. The main part of the building is covered with a gable roof draining toward the north and south, that is, with the gable end facing Route 7. The truck loading area was originally proposed to be roofed with a gable roof draining to the east and west, but was revised to be a somewhat smaller shed roof draining only to the west, as shown on Exhibit 22 (the revised site plan). The truck loading area is closed in on its easterly side, so that the easterly face of the building presents a 60-foot-long facade, appearing as a gable end with a flat wall extension. The building will have a white clapboard exterior and will blend in with the characteristic residential structures in the area, although it will be larger than those structures and will have the appearance of a commercial building with its related parking area.

The finished floor elevation of the building is at an elevation approximately nine feet above Route 7; the building is proposed to be 23 feet in height, It meets the front setback requirements with respect to Route 7 and Plains Road, and meets the remaining setback requirements to its property lines. The building and lot coverage also meet the dimensional requirements of the zoning ordinance. The building will be served by municipal water supply and sewered waste disposal, and has obtained the required municipal and state water supply and wastewater disposal permits. The proposed use and building design will be served adequately with fire protection and police services. The proposed use and building design will be served adequately by solid waste disposal services, provided that pickup from the dumpster will be scheduled at hours when the building is not open to public access. Appellee-Applicant proposes to construct 24 off-street parking spaces in three parking areas[2] to serve the project, of which three spaces will be reserved for handicapped accessibility[3].

Access to the property is by a 50-foot-wide right-of-way over Lot 1 from Plains Road, within which is a paved driveway at least 24 feet in width near the location of the existing driveway from Plains Road. A former access onto the property directly from Route 7, which also serves the Rawlings private residence, is still shown on the revised site

plan (Exhibit 22) as being blocked by a row of ten trees. However, Appellee-Applicant now proposes, as requested by the fire department, to eliminate the ten trees and to block that access drive with a gate or breakaway structure capable of being driven through by emergency vehicles, to provide emergency access to the post office building and parking lots. The original purpose of the row of trees was to block the existing Route 7 access visually as well as practically, so that it would be apparent to people driving along Route 7 that the access serves only the Rawlings property, so that the public would not attempt to use it for access to the post office and have to back out again onto Route 7. Appellee-Applicant has not proposed to camouflage the now-proposed gate by tall perennial grasses, vines, or other plantings, or by signage visible from Route 7, to provide a visual cue so that cars bound for the post office do not turn onto that access from Route 7. The backing out of a vehicle onto Route 7 at that location would pose a traffic hazard, because Route 7 is a major traffic artery, despite the long sight distance for traffic approaching that location northbound on Route 7.

A Class II wetland has been identified on the site as the pond and a surrounding area marked as A edge of wetland@ on the site plan. The wetland as it existed with the pond was identified as significant at least for the function of water storage for flood water and storm runoff and for the function of surface and ground water protection. Appellee-Applicant obtained a conditional use determination (CUD) from the Agency of Natural Resources to build a portion of the building and parking lot in the 50' buffer for the wetland. No construction is proposed to take place in the wetland itself. The proposal also includes the planting and maintenance of a vegetated buffer on both lots along the stream traversing the property from north to south, except where that buffer is occupied by the building and the truck loading dock.

Since the time that the CUD was issued, Appellee-Applicant has changed its proposal to propose draining the pond, vegetating the resulting area, restoring the stream channel within the former pond, and using the area of the former pond as part of the stormwater management system[4] for the project. Runoff from the roof and parking lots at the post office is likely to contain sand and salt during and after winter snowfall conditions, as well as small amounts of petroleum products and heavy metals from the vehicles using the parking lot. Appellee-Applicant proposes to eliminate the outlet and peat bed shown on the original site plan leading from the loading dock area through a ramped sidewalk towards the south. Appellee-Applicant proposes instead (as shown on Exhibit 22) to direct all surface flow

from the northwesterly parking area and the loading dock area, through the southwesterly parking area sloped at 3%, towards the south across a stone edging flush with the parking lot, onto the grassy area to the south of the southwesterly parking area. The stone edging is intended to prevent erosion of the grassy area due to the velocity of the flow coming off the 3% slope of the parking lot. It is proposed to be two feet wide and one foot deep, filled with sufficiently large stone so that it will not wash out in a heavy rainfall. Because it will be a trench rather than a stone-covered embankment, it may collect and hold stagnant water after storm events. The flow is proposed to proceed by surface flow across the flat grassy area towards[5] the area of the former pond.

The Agency of Natural Resources is supportive of this approach in principle, because it is expected to reduce the amount of pollutants reaching the outlet stream, but the applicant has not yet filed and the Agency has not yet ruled on an amendment to the CUD. Appellee-Applicant proposes to drain the pond slowly, into the stream at the pond outlet through a temporary sediment trap, so that the resulting flow in the stream during drainage would not cause erosion downstream, but not to install any permanent sediment controls. As of the time of trial, Appellee-Applicant did not propose or present evidence as to the profile of the pond bottom, whether any sediments in the pond (accumulated over the twenty-five year lifespan of the pond) would have to be removed to protect the stream, whether any fill would be needed to increase the profile of the bottom of the former pond to allow a defined stream channel to be created, or whether or what types of additional vegetation (other than the proposed > conservation mix= of grasses) would need to be planted in the former pond bottom to achieve stormwater retention or treatment and to avoid erosion. It is likely, as appears from a comparison in Exhibit 2 of the elevation at the pond outlet (523.3) with the elevation near the pond inlet at the goose house (526), that some fill will be needed in some portion of the pond bottom simply to allow a defined stream channel to be created, even if none of the sediment in the existing pond bottom also would have to be removed. It is also likely, given the present design of the system, that permanent stormwater structures would have to be added to the system at or near the outlet to trap sediments, or retain the stormwater for treatment, at least during frozen early spring runoff conditions.

The northerly parking area is designed to drain towards the east across the 50-foot stream buffer into the small stream running in a north-south direction from Lot 1 towards the former pond, and will not

receive any treatment by surface flow other than by flowing across the 50-foot[6] buffer.

Plains Road intersects Route 7 at an angle of 34 degrees, making the reciprocal angle 146 degrees on the project corner. While this intersection angle is beyond the 90-degree or right angle recommended for roadway intersection construction, it would not necessarily be unsafe if there were adequate sight distances in all directions of and from the intersection. Vehicles traveling south on Route 7 approaching the intersection of Route 7 with Plains Road experience a hill rising fourteen feet in elevation within the last 350 feet before the intersection. The effect of this geometry is that traffic approaching the intersection on Route 7 from the north cannot see Plains Road or any traffic waiting on Plains Road to turn south on Route 7 until it is very close to the crest of the hill. Similarly, although traffic waiting on Plains Road to turn south on Route 7 has an apparent sight distance of 770 feet looking to the north, in fact the change in elevation creates a dip in which oncoming southbound Route 7 traffic is hidden from view for a time, even though the stop bar is reoriented at a 90-degree angle to Route 7. Traffic waiting on Plains Road to turn in either direction on Route 7 has an ample sight distance of 1000 feet looking to the south. Pedestrians waiting on either side of Route 7 to cross Route 7 at or just south of Plains Road, at the location of or aiming towards the proposed sidewalk access onto the project site, do not have an adequate sight distance to see traffic approaching the crest of the hill from the south, and cannot be sure of being able to cross both lanes of Route 7 safely at that location.

The area of property remaining as part of the Route 7 right-of-way at the corner of Route 7 and Plains Road (that is, not owned or controlled by Appellee-Applicants), within the shallow 146-degree corner, forms an approximately four- to six-foot-high bank with the traveled way of Route 7, compared with the elevation of the proposed Plains Road access driveway. Although this is a relatively low embankment, it limits the ability of a driver exiting the property onto Plains Road from seeing traffic traveling northbound on Route 7 as that traffic prepares to turn right onto Plains Road. As designed and without the ability of Appellee-Applicants to cut away or reshape the portion of the corner within the Route 7 right-of-way, a driver exiting the proposed Plains Road access driveway will only be able to see the roof and 27 inches of the upper part of a vehicle traveling in the right lane of Route 7 northbound and preparing to turn right onto Plains Road, until after the vehicle has fully turned onto Plains Road. (Exhibit 25.) Under winter conditions, when snowbanks will build up on that

embankment, the exiting driver will not be able to see the turning vehicle until much later in the turn. Moreover, because the turn from Route 7 northbound onto Plains Road eastbound is a relatively shallow 146-degree curve, the northbound Route 7 traffic will not be forced to slow down in preparation for making the turn as it would be required to do approaching a 90-degree right turn intersection. The driver waiting at the access driveway to turn left onto Plains Road would only be able to see the vehicle turning onto Plains Road from 150 feet away, which is not a sufficient distance for the exiting vehicle to pull out safely, calculated using the speed limits on Route 7 and Plains Road without regard to whether vehicles actually drive faster than the 35 miles per hour speed limit at that location.

Appellee-Applicant= s traffic counts were done during a school vacation and cannot be adjusted for normal traffic. In addition, the traffic counts took place during the time period from 8 a.m. to 9:45 a.m. and from 1:30 p.m. to 4:45 p.m., and therefore do not account for a portion of the potential morning peak hour (the highest four consecutive quarter-hours between 7-9 a.m.) and a portion of the potential afternoon peak hour (the highest four consecutive quarter-hours between 4-6 p.m.). Nor does the methodology account for the operating hours of the post office; that is, that the post office or at least the post office box lobby will be open from as early as 7:00 a.m. to as late as 5:30 p.m. In fact, the afternoon peak hour on Route 7 nearest to Plains Road occurs at 4:45 to 5:45 p.m. Regardless of school vacations, the great majority of vehicles turning from Plains Road onto Route 7 turn left or south (51 of 54 in one count, and 33 of 35 in another count). When the traffic volumes are properly adjusted, the crucial turning movement through the Plains Road/Route 7 intersection (the left turn from Plains Road onto Route 7) is at present an acceptable, though not good, level of service C. Without improvements to the intersection, that level of service can be expected to deteriorate to a congested level of service D or even a failed level of service E in the afternoon peak hour, with the addition of the project= s traffic.

The existing post office serving Pittsford is 960 square feet in area and is located in the center of Pittsford Village, near the village green, the library, a grocery store, a laundromat, and other village center uses approximately 3/8 of a mile from the project site. People tend to use the existing post office in conjunction with other tasks in the village center, and it serves a social function of promoting visiting and social interchange among the residents who frequent it. People tend to walk, drive or bicycle to the village center for multiple purposes in a

single trip. The existing post office lobby is open from 7 a.m. to 5 p.m. on weekdays. Large tractor-trailers do not now serve the Pittsford post office and Appellee-Applicants propose that they also will not be used to serve the proposed site; that is, the largest vehicle serving the post office functions will be a unit-body truck or large van.

The area along Route 7 near the Plains Road intersection is a mixed-use area of residential uses (both single-family and multi-family), interspersed with commercial uses common along major roadways such as Route 7. A bank, a gas station and deli/convenience store, and a used car sales lot are located on Route 7 within 277 to 491 feet south of the project site. The area along Plains Road east of the intersection is primarily residential, although the municipal offices are also located farther east on Plains Road, out of sight of the intersection.

Of the conditional use standards, we address only those contested by the parties.

To grant conditional use approval, ' 2.12.1(b) requires a finding that the proposal will not cause any unreasonable hazard to or impact upon health, property or property values through fire, unsanitary conditions, erosion, noise, air or water pollution. The proposal will not cause any unreasonable hazard to or impact upon health, property or property values through fire, unsanitary conditions, noise, or air pollution. As to erosion and water pollution, it remains possible for the site to be designed and engineered to avoid an unreasonable impact from erosion and water pollution. However, based upon the evidence presented in this proceeding, without further engineering design and specification of the contours, fill, plantings and sediment controls within the area of the former pond, and further direction of the sheet runoff towards the area of the former pond, the proposal is likely to cause unreasonable erosion and water pollution from the sediment, salt and other pollutants in stormwater runoff from the parking lots, especially during frozen runoff and spring melt conditions.

To grant conditional use approval, ' 2.12.1(d) requires a finding that the proposal will not adversely affect the character of the area affected. Appellants ask that this standard be applied to the area to be vacated by the existing post office, as well as the area near the proposed new post office. We recognize that movement of traditional village center services to the outskirts of a village encourages the development of the growth patterns commonly called > sprawl.= We also recognize that combating sprawl is an important policy

consideration in the present day, as has been recognized by various commission reports and the recent legislation strengthening downtown areas. See, e.g., the Historic Downtown Development Act, 24 V.S.A. ' ' 2790-2796. Nevertheless, in order to apply such policies to conditional use applications, a municipality must implement the policy by adopting or amending its zoning or other ordinances. A municipality may wish to establish a village center zoning district as the only zone in which certain functions such as post offices may be located, to facilitate socio-economic interaction (see 24 V.S.A. ' 2790(c)). However, the Town of Pittsford has not done so. Nor does its zoning ordinance contain a so-called > siting= provision allowing the ZBA (or this Court on appeal) to choose where among several alternative sites a particular use may be located. Rather, all that the ZBA (or this Court on appeal) may consider is whether a location proposed by the applicants for a particular use meets the requirements of the zoning ordinance.

Therefore, while recognizing the social disruption to the fabric of village society that can be caused by moving the particular use out of the village center, in the present appeal the Court is restricted to considering the character of the area for which the project is proposed. That area is a mixed use, residential and commercial area adjoining the major roadway of Route 7. The proposed commercial building will not adversely affect the character of the area.

To grant conditional use approval, ' 2.12.1(e) requires a finding that the proposal will not adversely affect the traffic on roads and highways in the vicinity. Without some redesign of the Route 7/Plains Road intersection to slow the traffic turning right from Route 7 onto Plains Road, as discussed above, traffic exiting the project driveway will not be able to make a left turn safely onto Plains Road. Without some redesign of the Route 7/Plains Road intersection to accommodate an increase in the volume of traffic turning left from Plains Road onto Route 7 during peak conditions, that turning movement in the intersection will deteriorate to an unacceptable level. Without some redesign of the Route 7/Plains Road intersection, therefore, the proposal can be expected to adversely affect the traffic on roads and highways in the vicinity. In addition, without plantings or signage to screen the proposed gate[7] blocking the emergency access to the property, the proposal will adversely affect traffic on Route 7.

To grant conditional use approval, ' 2.12.1(g) requires a finding that the proposal complies fully with any specific standards for the particular conditional use. Appellants argue that the proposal fails to

meet ' 5.4.2(c)(iii), which requires that access driveways to parking spaces shall be of sufficient area to facilitate easy parking of vehicles without danger of collision with vehicles already parked. Although the design of the three parking areas appears to pose some conflicts between pedestrians (or wheelchair users) and the truck backing space; to pose some conflicts between vehicles using the southwesterly parking area and the truck backing space; to pose some conflicts between persons using the drop boxes and vehicles maneuvering within both westerly parking areas; and to pose a problem for a driver to extricate a vehicle from space #1, those are issues regarding site circulation that should have been addressed by the Planning Commission during site plan approval. No evidence was presented to suggest that the width and length (area) of the access drives to the parking spaces was insufficient to allow drivers to park without danger of collision with vehicles already parked. The proposal complies fully with the specific standards for this particular conditional use.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that conditional use approval is DENIED for the proposed post office, ' ' 2.12.1(b) and (e), without prejudice to the Applicant= s submittal to the ZBA of the same or a revised building design at such time in the future as the Applicant is able to submit revised or additional plans and data for the pond removal and stormwater treatment system to prevent erosion or water pollution <u>and</u> is able to show that changes are to be made to the Plains Road/Route 7 intersection (and the screening of the emergency access gate) sufficient to address the problems discussed in this decision.

Dated at Barre, Vermont, this 21st day of October, 2002.


_____
Merideth Wright
Environmental Judge


---

### Footnotes

[1] The term Appellee-Applicant is used in the singular in this decision to refer solely to Eastern Development Corporation or its successor or subsidiary Pittsford Enterprises, LLC.

[2] We will refer to the three parking areas as the northerly parking area (spaces 1-6), the northwesterly parking area (spaces 7-13), and the southwesterly parking area (spaces 14-24). While a designation in bold stating "lot 2" appears on the site plan within the southwesterly parking lot (and this reference was used to refer to the southwesterly parking lot in some of the testimony and in Appellants' memorandum), the designation "lot 2" is actually only the label on the plan for the second of the two subdivided lots.

[3] It is not clear from the plan how a public user of handicapped space #19 has access to the post office building without having to traverse the truck backing area and the length of the northwesterly parking area to reach a dropped curb access to the building's sidewalk. That space may have been intended for wheelchair access by an employee by an inclined sidewalk to the truck loading access area, but it is not designated on the plan as reserved for employee parking.

[4] Due to the size of the proposed impervious areas to be added by this project, no stormwater management permit is required by state regulations to manage the expected increase in volume of stormwater. However, the expected velocity and direction of stormwater flow must nevertheless be analyzed to determine whether it will create erosion or water pollution, under §2.12.1(b) of the conditional use standards.

[5] The site plan lacks topographic contours within the grassy area to the south of the southwesterly parking area, as well as lacking contours within the pond proposed to be drained. Without some slight slope towards the pond from that grassy area, Appellee-Applicant proposes no apparent reason why runoff from the parking area would receive treatment by traveling through the vegetated buffer and the former pond area, instead of continuing to flow southerly off the property and onto the neighboring property.

[6] Although the buffer is reduced in width behind the building, it is a full 50 feet in width from the outlet of the northerly parking lot (near the dumpster) to the stream.

[7] We recognize that this may easily be remedied, however, it has not yet been proposed.